Joanna Ardalan (SBN 285384)
Email: jardalan@onellp.com
Jennifer Mauri (SBN 276522)
Email: jmauri@onellp.com
**ONE LLP**
23 Corporate Plaza, Suite 150-105
Newport Beach, CA 92660
Telephone: (310) 437-8665
Facsimile: (310) 943-2085

Attorney for Plaintiffs,
Jeffrey Ian Chen and Ting Ting Jiang

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JEFFREY IAN CHEN, an individual; and TING TING JIANG, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>THE MAIMON GROUP INC., a California corporation; AIDA NIKKIAN, an individual; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br>**(1) COPYRIGHT INFRINGEMENT (17 U.S.C. § 501 ET SEQ.);**<br>**(2) VIOLATIONS REGARDING REAL ESTATE LISTINGS (CAL. CIV. CODE § 1088 ET SEQ.);**<br>**(3) NEGLIGENCE (CAL. CIV. CODE § 1714);**<br>**(4) FRAUD (CAL. CIV. CODE § 1573);**<br>**(5) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;**<br>**(6) NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE; AND**<br>**(7) UNFAIR COMPETITION (CAL. BUS. & PROF. CODE § 17200)**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Jeffrey Ian Chen ("Chen") and Ting Ting Jiang ("Jiang") (collectively, "Plaintiffs"), by and through their attorneys of record, complain against Defendants The Maimon Group Inc. ("Maimon"), Aida Nikkian ("Nikkian"), and DOES 1-10, inclusive (collectively, "Defendants"), as follows:

## JURISDICTION AND VENUE

1. This is a civil action against Defendants for copyright infringement under 17 U.S.C. § 501 et seq., and violations of state common and statutory law including the California Civil Code regarding real estate listings under Cal. Civ. Code § 1088 et seq., negligence, fraud, intentional interference with prospective economic advantage, negligent interference with prospective economic advantage, and unfair competition.

2. This Court has subject matter jurisdiction over this action as a federal question under 28 U.S.C. § 1331 and 28 U.S.C. § 1338.

3. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' remaining causes of action, as the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

4. Venue is proper in this district under 28 U.S.C. § 1391(b)-(c) and 28 U.S.C. § 1400(a), in that the claims arise in this judicial district and the injury suffered by Plaintiffs took place in this judicial district.

5. This Court has general personal jurisdiction over Defendant Maimon. On information and belief, Maimon has its principal place of business in Los Angeles, California, and does continuous and systematic business in the state of California, including by providing real estate services to residents in California and in connection with real property located in California.

6. This Court has general personal jurisdiction over Defendant Nikkian. On information and belief, Defendant Nikkian is an individual residing in Los Angeles, California.

## PARTIES

7. Plaintiff Chen is an individual residing in California.

8. Plaintiff Jiang is an individual residing in California.

9. On information and belief, Maimon has been licensed as a "Corporation" with the California Department of Real Estate since at least October 31, 2023.

10. On information and belief, Nikkian has been licensed as a "Salesperson" with the California Department of Real Estate since at least March 26, 2025.

11. On information and belief, Maimon is listed as the "Responsible Broker" for Nikkian with the California Department of Real Estate.

12. DOES 1 through 10, inclusive, are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names. Plaintiffs will ask leave of court to amend this Complaint and insert the true names and capacities of said Defendants when the same have been ascertained. Plaintiffs are informed and believe and, upon such information and belief, allege that each of the Defendants designated herein as a "Doe" is legally responsible in some manner for the events and happenings herein alleged, and that Plaintiffs' damages as alleged herein were proximately caused by such Defendants.

## FACTS COMMON TO ALL COUNTS

### *Plaintiffs' Rental Property and the Copyrighted Photographs*

13. At all times relevant to this action, Plaintiffs have been the owners of real property located at 3541 Multiview Dr., Los Angeles, CA 90068 (the "Rental Property"), a luxury high-end rental property.

14. As part of Plaintiffs' efforts to market the Rental Property to potential renters, Plaintiffs hired a professional photographer, Martin Villa ("Villa"), to take photographs of the Rental Property.

15. On or around October 31, 2024, Villa created numerous photographs of the Rental Property, including photographs that are the subject matter of this dispute (the "Photographs"), each a unique work in and of itself, that highlight different locations, amenities, and features within the Rental Property intended to showcase the Rental Property in a picturesque light for purposes of marketing and promotional efforts intended to convince prospective renters to choose the Rental Property over other rental properties.

16. Following the creation of the Photographs, Villa assigned all rights, title and interest in and to the Photographs, including but not limited to the copyrights therein and thereto to Plaintiffs.

17. The Photographs were registered with the United States Copyright Office:

a. The photographs depicted in **Exhibit 1** were timely registered with the U.S. Copyright Office on March 7, 2026 as Registration No. VA0002493015 with the following titles: Photographs and visual media captured on October 31, 2024, for the property located at 3541 Multiview Dr. (Published December 16-27, 2025).

b. The photographs depicted in **Exhibit 2** were registered with the U.S. Copyright Office on March 7, 2026 as Registration No. VAU001581783 with the following titles: Photographs and visual media captured on October 31, 2024, for the property located at 3541 Multiview Dr. (Unpublished).

c. The photographs depicted in **Exhibit 3** were registered with the U.S. Copyright Office on March 7, 2026 as Registration No. VA0002493034 with the following titles: Photographs and visual media captured on October 31, 2024, for the property located at 3541 Multiview Dr. (2024 Publication).

18. As the copyright holders of all of the Photographs, Plaintiffs own and exclusively control the rights to reproduce, adapt, distribute, and publicly display the Photographs.

***Plaintiffs' Initial Meeting with Defendants and Defendants' Creation and Publication of an Unauthorized MLS Listing for the Rental Property***

19. In or around late 2025, Plaintiffs met with real estate professionals to secure a lease agreement for the Rental Property with a lessee.

20. One of the persons that Plaintiffs met with was Nikkian, who held herself out as a REALTOR® associated with Maimon—a corporation holding itself out as a "premier luxury short-term home rental, concierge service, and technology company." (*See* https://www.themaimongroup.com/about-us; last visited July 13, 2026).

21. As part of the initial interview and discussions with Nikkian and Maimon, Plaintiffs provided copies of the Photographs to Nikkian for evaluation of the property only, not for further publication.

22. Following their initial conversations, Plaintiffs decided not to hire Nikkian and Maimon, and expressly told Nikkian that they would not enter a contract with her or Maimon.

23. Plaintiffs never entered into a contractual agreement with Nikkian or Maimon for Defendants to represent Plaintiffs in relation to the Rental Property, nor did Plaintiffs authorize Defendants to take any action in relation to marketing the Rental Property.

24. Despite not being hired by Plaintiffs, Nikkian and Maimon—without permission or authorization—began marketing and promoting the Rental Property for rent at $14,500 per month—an amount that was never approved by Plaintiffs.

25. Specifically, on information and belief, on or around January 23, 2026, Nikkian and Maimon created and published a multiple listing service ("MLS") listing for the Rental Property, identifying Nikkian and the Maimon Group as the "Owner's Agent," advertising the rent as "$14,500" per month, and featuring the Photographs. A true and correct copy of this MLS listing is attached hereto as **Exhibit 4.**

26. MLS is an online platform that compiles home listings from brokerages in a given market that allows real estate professionals to see, share, and promote homes for sale or rent.

27. On information and belief, MLSs are the industry standard source for real estate data because their information is curated and verified by real estate professionals.

28. Cal. Civ. Code § 1088 governs real estate listings in MLSs.

29. Cal. Civ. Code § 1088(a) states that: "A listing may not be placed in a multiple listing service unless authorized or directed by the seller in the listing."

30. Cal. Civ. Code § 1088(b) states that: "If an agent or appraiser places a listing or other information in the multiple listing service, that agent or appraiser shall be responsible for the truth of all representations and statements made by the agent or appraiser of which that agent or appraiser had knowledge or reasonably should have had knowledge to anyone injured by their falseness or inaccuracy."

31. Not only did Plaintiffs not approve or authorize the placing/publication of the MLS listing for the Rental Property or the Photographs therein, they also did not approve advertising the rent in the amount of $14,500 per month, nor would they have.

32. Plaintiffs believed that $14,500 per month was too high to generate the high levels of interest from potential renters that Plaintiffs were seeking—something that Defendants would have learned had they even asked for Plaintiffs' permission to publish the MLS listing. Plaintiffs intended to offer the Rental Property at a monthly rental price that would generate interest quickly from potential renters and result in the Rental Property being rented quickly after being made available. Further, Plaintiffs recognized that if the Rental Property was priced too high for the current market, it would cause delays in entering a rental agreement and would make the property appear not "hot."

33. Upon learning that Defendants had published the unauthorized MLS listing and the Photographs, Plaintiffs contacted Defendants about the unauthorized listing.

34. On or around January 29, 2026, Defendants removed the MLS listing for the Rental Property.

35. On or around January 30, 2026, Barak Maimon, who is on information and belief a licensed broker affiliated with Maimon, responded to Plaintiffs via email wherein he admitted that "Aida [Nikkian] entered/published the listing [], but the owner did not approve marketing/publication."

36. Thereafter, Plaintiffs began advertising the Rental Property for a rental rate of $12,950 per month. On information and belief, MLS listings include price history information. Accordingly, any potential renter considering whether to rent the Rental Property would quickly and easily see that the rental price had been reduced from $14,500 to $12,950.

37. It is a well-known principle of economics that discounts are often offered as a way to move stagnant stock. If buyers are not purchasing the item at the offered price, the seller lowers the price to entice consumers to buy. However, discounts can signal to consumers that the seller is eager to move the product, or in this case, the lease.

38. On information and belief, a 10% reduction in the rental price communicated to potential renters that the Rental Property was not desirable or in-demand and that potential renters would not need to act quickly if they wanted to rent the Rental Property. This was the opposite of the reputation that Plaintiffs were trying to create for the Rental Property.

39. On information and belief, the 10% discount caused potential renters to speculate on reasons why the Rental Property was not being rented and why Plaintiffs were having to offer such a significant discount to attract renters. This further destroyed any reputation that the Rental Property had as being in-demand.

40. On information and belief, rather than generating high levels of interest from potential renters, the rental price of $12,950 resulted in lower levels of interest from potential consumers and resulted in the Rental Property taking longer to rent, thus causing financial damage to Plaintiffs in at least the form of lost rental income.

41. On information and belief, rather than generating interest in the Rental Property and having renters for the Rental Property by no later than mid-February 2026, as would have occurred had the unauthorized MLS listing never been published, the Rental Property remained unrented until March 6, 2026.

42. Upon information and belief, the perceived 10% discount on the rent had resulted, and will continue to result, in potential renters being wary of renting the Rental Property and will cause Plaintiffs to incur additional expense to engage in additional marketing and advertising to entice potential renters.

***Defendants' Misrepresentation That Nikkian is a REALTOR***

43. According to the National Association of REALTORS®, "REALTORS® are licensed professionals who facilitate property transactions between buyers and sellers and are members of NAR (National Association of REALTORS®), adhering to a strict Code of Ethics and high standards of conduct. All REALTORS® are licensed real estate professionals, but not all real estate agents are REALTORS®." (*See* https://www.nar.realtor/about-nar/when-is-a-real-estate-agent-a-realtor).

44. Prior to initially speaking with Nikkian, Plaintiffs saw and relied upon advertising that claimed that Nikkian was a REALTOR. Indeed, Plaintiffs' belief that Nikkian was a REALTOR was material to Plaintiffs' interest in speaking with her. *See* **Exhibit 5**.

45. *Inter alia*, Nikkian claimed that she was a REALTOR in advertising that Defendants distributed to Plaintiffs before her discussions with them.

46. One of the reasons that Plaintiffs specifically sought to hire a REALTOR was due to the requirement that REALTORS® are bound to abide by the REALTOR® Code of Ethics & Standards of Practice.

47. On information and belief, Nikkian is not, and at no time relevant to this action was, a REALTOR.

48. Nikkian misrepresented that she is a REALTOR in her advertising. She is not a member of NAR and therefore may not represent to others that she is one. She made public-facing misrepresentations that she is a REALTOR—and thus, that she is bound to abide by the REALTOR Code of Ethics & Standards of Practice—for potential clients and customers to rely upon. Such representation is false.

***Defendants' Infringement of the Photographs***

49. As set forth above, the unauthorized MLS listing created and published by Defendants reproduced, distributed, and publicly displayed unauthorized copies of the Photographs and/or derivatives thereof wholesale.

50. Defendants did so for blatantly commercial purposes, exploiting the Photographs to showcase the features of the Rental Property to make it appear as though they had a luxury listing that they did not have—thus fraudulently promoting Defendants' listing services.

51. Defendants' acts of infringement are willful because, *inter alia*, Maimon is a sophisticated, for-profit real estate business with full knowledge of the strictures of federal copyright law and the basic requirements for licensing copyrighted content. After all, Defendants appreciate the need for high-quality photographs to rent out high-end properties for six-figure leases. Maimon describes the "setup process" for a potential rental property as "include[ing] a property assessment, professional staging where needed, smart home and safety installations, photography, listing build, and platform onboarding. Initial investment typically ranges between $5,000 and $15,000 depending on what the home needs. . . ." (https://www.themaimongroup.com/list-with-us/renters). Indeed, every real estate

listing on the Maimon Website includes numerous photographs of the property. Accordingly, Defendants understand the value of the photographs and the need to obtain proper licensing prior to publishing photographs.

52. Additionally, Maimon itself actively protects its own copyrights, including as demonstrated by the "2017 - 2026 Copyright" notice it placed on its website, located at https://www.themaimongroup.com/.

53. At all relevant times, therefore, Defendants clearly knew of the need for proper licensing of the Photographs and failed to obtain proper authorization for the uses detailed herein.

54. Plaintiffs attempted to resolve this dispute with Defendants prior to filing this lawsuit.

**FIRST CAUSE OF ACTION**

**(Copyright Infringement, 17 U.S.C. § 501 et seq.)**

**(By Plaintiffs against All Defendants)**

55. Plaintiffs incorporate by reference the allegations in paragraphs 1 through 54 above as though fully set forth herein.

56. Plaintiffs are the owners of all rights, title, and interest in the copyrights in and to the Photographs, which consists substantially of wholly original material, and which are copyrightable subject matter under the laws of the United States.

57. The Photographs have all been registered with the United States Copyright Office. The Photographs assigned Registration No. VA0002493015 were timely registered.

58. Defendants have, without permission or compensation to Plaintiffs, reproduced, distributed, and publicly displayed unauthorized copies of the Photographs and/or derivatives thereof wholesale in the MLS listing for the Rental Property. The listing, along with the Photographs, were further reproduced, distributed, and publicly displayed by a number of other real estate websites. Such

acts constitute infringement of Plaintiffs' exclusive rights under copyright pursuant to 17 U.S.C. §§ 106 & 501.

59. In addition, Defendants, without the permission or consent of Plaintiffs, knowingly encouraged, induced, materially contributed to, and/or facilitated the unauthorized reproduction, adaptation, distribution, and public display of unauthorized copies of the Photographs by making the Photographs available for download.

60. Since Defendants wrongfully made the Photographs available for download, the Photographs have been reproduced and distributed by multiple other sources without Plaintiffs' permission or consent. Defendants are therefore secondarily liable for infringement under the Copyright Act.

61. Each of the Defendants directly and individually performed the acts alleged herein, and also did so jointly and in concert with one another, or as an agent or alter ego of the other. Accordingly, each of the Defendants is liable for all of the acts alleged herein because they were the cause in fact and proximate cause of all injuries Plaintiffs have suffered.

62. The infringement of Plaintiffs' rights in each of the respective copyrighted Photographs constitutes a separate and distinct act of infringement.

63. Defendants' unlawful conduct, as set forth above, was willful, intentional, and purposeful, in disregard of and with indifference to Plaintiffs' rights. With respect to the timely registered infringements, Plaintiffs are entitled to a potential award of up to $150,000 per work in statutory damages, in addition to their attorneys' fees.

## SECOND CAUSE OF ACTION

**(Violations Regarding Real Estate Listings, Cal. Civ. Code § 1088 et seq.)**

**(By Plaintiffs against All Defendants)**

64. Plaintiffs incorporate by reference the allegations in paragraphs 1 through 63 above as though fully set forth herein.

65. Defendants violated Cal. Civ. Code § 1088(a) by placing the MLS listing for the Rental Property as available to rent for $14,500 without the authorization or direction of Plaintiffs. The information in the MLS listing was false or inaccurate because the monthly rental price was false or inaccurate.

66. Defendants knew, or reasonably should have known, that the monthly rental price was false or inaccurate.

67. Potential renters reasonably relied on the false or inaccurate information in the MLS.

68. Plaintiffs were harmed as a result of the false or inaccurate information in an amount to be established at trial.

69. Defendants' conduct in placing the unauthorized MLS listing was a substantial factor in causing Plaintiffs' harm.

70. Pursuant to Cal. Civ. Code § 1088(b), Defendants are "responsible" for the misrepresentations in the MLS listing, including the misrepresentation as to the rental price being $14,500.

## THIRD CAUSE OF ACTION

**(Negligence)**

**(By Plaintiffs against All Defendants)**

71. Plaintiffs incorporate by reference the allegations in paragraphs 1 through 70 above as though fully set forth herein.

72. Defendants were negligent when they created and published the MLS listing for the Rental Property without first obtaining Plaintiffs' authority or approval.

73. Plaintiffs had the right to expect that Defendants would use reasonable care and not violate the law and had no reason to know that Defendants would not use reasonable care or comply with applicable laws, including Cal. Civ. Code § 1088.

74. Defendants' negligence was a substantial factor in causing Plaintiffs' harm, including because potential renters reasonably relied on the false or inaccurate information in the MLS.

75. Plaintiffs were harmed as a result of the false or inaccurate information in an amount to be established at trial.

**FOURTH CAUSE OF ACTION**

**(Fraud)**

**(By Plaintiffs against All Defendants)**

76. Plaintiffs incorporate by reference the allegations in paragraphs 1 through 75 above as though fully set forth herein.

77. Defendants represented to Plaintiffs that Defendant Nikkian was a REALTOR, and thus, inherently represented to Plaintiffs that she was bound to abide by the REALTOR® Code of Ethics & Standards of Practice. Such representation was made on her Instagram Account, which was used for the purpose of promoting Nikkian and Maimon's real estate services and obtaining clients, like Plaintiffs. *See* **Exhibit 5**, incorporated herein by reference.

78. Defendant Nikkian is not a REALTOR®.

79. Defendant Maimon knew that Defendant Nikkian was not a REALTOR but permitted her to make that representation to Plaintiffs in connection with her employment and/or providing services on behalf of Maimon.

80. Further, Defendants intentionally failed to disclose that their prior representation that Nikkian was a REALTOR was a misrepresentation.

81. Defendants knew that their representations that Nikkian was a REALTOR were not true.

82. Defendants intended for Plaintiffs to rely on the representation that Nikkian was a REALTOR, as shown by their inclusion of that misrepresentation in the marketing materials provided by Defendants to Plaintiffs prior to their initial meeting wherein Plaintiffs were considering hiring Defendants.

83. Plaintiffs did not know that Nikkian was not a REALTOR until after Defendants created and published the unauthorized MLS listing.

84. Plaintiffs reasonably relied on Defendants' representation that Nikkian was a REALTOR.

85. Plaintiffs were harmed by their reliance on Defendants' misrepresentation and that reliance was a substantial factor in causing Plaintiffs' harm. Inter alia, Plaintiffs would not have met with or considered using Defendants' services if Plaintiffs had known that Nikkian was not a REALTOR, and thus, Defendants would not have had access to the information or Photographs used to create the unapproved MLS listing.

86. As a result of Defendants' misrepresentation, Plaintiffs were harmed in an amount to be proved at trial.

## **FIFTH CAUSE OF ACTION**

**(Intentional Interference with Prospective Economic Advantage)**

**(By Plaintiffs against All Defendants)**

87. Plaintiffs incorporate by reference the allegations in paragraphs 1 through 86 above as though fully set forth herein.

88. An economic relationship between Plaintiffs and their potential lessees exists, whereby there was a probability of future economic benefit to Plaintiffs.

89. Defendants knew of the relationship between Plaintiffs and their potential lessees.

90. As described herein, Defendants committed intentional acts designed to disrupt the relationship between Plaintiffs and their potential lessees, including by publishing or causing to be published misleading and false advertising for the Rental Property.

91. Defendants' wrongful acts actually disrupted the relationship between Plaintiffs and potential lessees.

92. As a direct and proximate result of Defendants' interference with Plaintiffs' prospective economic advantage, Plaintiffs have incurred and will continue to incur damages in an amount to be proven at trial.

93. Defendants' acts alleged above were willful, wanton, malicious, and oppressive, and were undertaken with the intent to vex and annoy Plaintiffs, and justify the awarding of punitive damages.

**SIXTH CAUSE OF ACTION**

**(Negligent Interference with Prospective Economic Advantage)**

**(By Plaintiffs against All Defendants)**

94. Plaintiffs incorporate by reference the allegations in paragraphs 1 through 86 above as though fully set forth herein.

95. An economic relationship between Plaintiffs and the potential lessees of the Property existed whereby there was a probability of future economic benefit to Plaintiffs.

96. Defendants knew of the relationship between Plaintiffs and their lessees, and knew or should have known that if they did not act with due care their actions would interfere with this relationship and Plaintiffs would lose in whole or in part probable future economic benefit.

97. Defendants failed to act with due care when they negligently disrupted the relationship between Plaintiffs and their potential lessees.

98. Defendants' negligent acts actually disrupted the relationship between Plaintiffs and their potential lessees, causing economic harm.

99. As a direct and proximate result of Defendants' interference with Plaintiffs' prospective economic advantage, Plaintiffs have incurred and will continue to incur damages in an amount to be proven at trial.

/ / /

/ / /

/ / /

**SEVENTH CAUSE OF ACTION**

**(Unfair Competition, Cal. Bus. & Prof. Code § 17200)**

**(By Plaintiffs against All Defendants)**

100. Plaintiffs incorporate by reference the allegations in paragraphs 1 through 99 above as though fully set forth herein.

101. Defendants engaged in unlawful, unfair or fraudulent acts and practices which constitute unfair competition within the meaning of Cal. Bus. & Prof. Code § 17200.

102. Defendants' acts or practices that violate Cal. Bus. & Prof. Code § 17200 include, but are not limited to, falsely representing that Nikkian is a REALTOR, and publishing an unauthorized and unapproved MLS listing.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1. For a declaration that Defendants willfully infringed Plaintiffs' copyrights;

2. For statutory damages pursuant to 17 U.S.C. § 504(c), in the maximum amount provided by law, as may be proven at trial, arising from Defendants' willful violations of Plaintiffs' rights under the Copyright Act or, in the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(b), Plaintiffs' actual damages, including Defendants' profits from infringement, in amounts to be proven at trial;

3. For an order pursuant to 17 U.S.C. § 503 requiring Defendants to deliver up for destruction or other reasonable disposition all copies made or used in violation of Plaintiffs' respective copyrights and for injunctive relief;

4. For actual damages suffered by Plaintiffs as a result of Defendants' unlawful conduct, in an amount to be proven at trial;

5. For reasonable funds for future corrective advertising to remediate Defendants' unlawful conduct;

6. For restitution in an amount to be proven at trial for unfair, fraudulent, and illegal business practices under Cal. Bus. & Prof. Code § 17200 et seq. and any other applicable law;

7. For exemplary and punitive damages to deter any further willful misconduct for Defendants' fraud and as otherwise allowed by law;

8. For prejudgment and post-judgment interest as allowed by law;

9. For costs of suit incurred as allowed by law;

10. For reasonable attorneys' fees as allowed by law;

11. For such other and further relief as the Court may deem just and equitable.

Dated: August 28, 2026

**ONE LLP**

By: /s/ Joanna Ardalan
Joanna Ardalan
Jennifer A. Mauri
Attorneys for Plaintiffs,
Jeffrey Ian Chen and Ting Ting Jiang

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury as to all claims and all issues so triable.

Dated: August 28, 2026

**ONE LLP**

By: /s/ Joanna Ardalan
Joanna Ardalan
Jennifer A. Mauri
Attorneys for Plaintiffs,
Jeffrey Ian Chen and Ting Ting Jiang